IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN LEE JOHNSTON,

    Petitioner,                 2:07-cv-2052-GEB-EFB-P

    vs.

A. HEDGPETH, Warden, et al.,

    Respondents.            <u>ORDER</u>

_____/

    Petitioner, a state prisoner proceeding pro se, has filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

    On July 18, 2008, the magistrate judge filed findings and recommendations which found that the petition was filed beyond the one-year limitation period and that petitioner had not demonstrated a basis for either statutory or equitable tolling. Accordingly, the magistrate judge concluded that the petition must be dismissed as untimely. The findings and recommendations notified the parties that any objections were to be filed within fifteen days. Petitioner has filed objections, which the court has reviewed in detail. For the reasons set forth in the findings and

///

recommendations and as set forth below, the objections are adopted in full. However, the court addresses two arguments that petitioner has made in his objections.

First, petitioner argues that if the limitations period began to run on the date he discovered evidence supporting his claim, then this action is timely.[1] See 28 U.S.C. § 2244(d)(1)(D). Second, petitioner argues that even if the petition is untimely, the court should reach the merits to avoid a fundamental miscarriage of justice.[2] See Schlup v. Delo, 513 U.S. 298, 314-15, 326-27 (1995). For the reasons explained below, both arguments fail.

## I.  28 U.S.C. § 2244(d)(1)(D)

As noted, petitioner argues that the limitations period runs from the date he discovered evidence supporting his claim that the prosecution presented testimony it knew to be false. For the reasons explained, the court finds that the petition is untimely.

Under section 2244(d)(1)(D), the one-year limitations period begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner has submitted a document dated May 20, 2004, signed by Parole Agent Mychael Pierce in which Pierce outlines a version of events that differed from that which was proved at trial. Pet'r Objs., Exh. B. Petitioner also submits the affidavit of his brother, Scott Johnston, stating that while doing yard work for Pierce in early May of 2004, Pierce told him that he believed a key witness at petitioner's trial had lied about certain details of the battery.[3] Objs., Exh. C at 2. Petitioner seems to assert that he became aware of this evidence

---

[1] This argument is raised for the first time in petitioner's objections to the Findings and Recommendations. Because petitioner proceeds without counsel, the court exercises its discretion to entertain this argument. See Brown v. Roe, 279 F.3d 742, 745 (9th Cir.2002).

[2] Petitioner argues, mistakenly, that the magistrate judge overlooked his claim. The first place the Schlup gateway is discussed is in the respondents' motion to dismiss. Resp.'s Mot. to Dism., at 8. Petitioner now attempts to make the argument.

[3] These details are not essential to an analysis under § 2244(d)(1)(D). They are discussed in detail, however, in the analysis of petitioner's argument under Schlup v. Delo, 513 U.S. at 314-15.

2

on April 1, 2005. Objs., at 3-4. However, the court does not accept April 1, 2005, as the date petitioner knew, or should have known through the exercise of diligence, of the factual basis of his claims. Significantly, Pierce did not share this information with someone who apparently was a stranger to the petitioner. He told petitioner's brother. There is no evidence that the brothers were estranged or that petitioner's brother attempted to conceal Pierce's disclosure from the petitioner. Thus, the court accepts May 20, 2004, as the date petitioner's brother learned of the information and finds that the federal petition is untimely under section 2244(d)(1)(D).[4] One year from May 20, 2004, is Saturday, May 21, 2005. Since the court was not open that day, petitioner had until Monday, 23, 2005, to file his federal habeas petition. Fed. R. Civ. P. 6(a)(3). The magistrate judge found, and petitioner agrees, that he did not file his first state post-conviction motion until January 24, 2006. Findings and Recommendations at 2; Objs. at 4. Thus, petitioner's first state postconviction motion was filed 247 days after the federal limitations period expired. When a petitioner commences the process of seeking state postconviction relief after the federal limitations period expires, the state court applications do not toll the limitations period. Fergusun v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Therefore, petitioner has not demonstrated that his federal petition is timely under 28 U.S.C. § 2244(d)(1)(D).

## II. Fundamental Miscarriage of Justice Argument

Petitioner argues that even if he filed his petition late, the court should reach the merits in order to avoid a fundamental miscarriage of justice. Pet'r Opp'n to Resp.'s Mot. to Dism., at 8-9; Objs. at 5-11. The argument petitioner makes ordinarily is applied where a petitioner has defaulted a state's procedural rules such that a federal court is barred from reaching the merits of his claims on habeas corpus. Schlup v. Delo, 513 U.S. at 315; House v. Bell, 547 U.S. 518, 521

---

[4] Scott Johnston does not state the exact date he spoke with Pierce. However, the week or so difference between "early May 2004" according to Johnston's recollection, and May 20, 2004, does not make a difference to the question of timeliness under § 2244(d)(1)(D).

3

(2006); Carriger v. Stewart, 32 F.3d 463, 477 (9th Cir. 1997). However, the Ninth Circuit has applied the fundamental miscarriage of justice rule in the context of untimely federal habeas petitions where neither statutory nor equitable tolling saved the petition. Johnson v. Knowles, 541 F.3d 933, 836-37 (9th Cir. 2008); Majoy v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002). In order for the court to overlook the untimeliness of the petition and reach the merits, petitioner must demonstrate "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. This standard can be satisfied only when a petitioner "support[s] his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Id. at 324. However, "the habeas court's analysis is not limited to such evidence." House, 547 U.S. at 537. The court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." Id. at 538. Based on all the evidence, the court must not "make an independent factual determination about what likely occurred, but rather [] assess the likely impact of the evidence on reasonable jurors." Id. With these standards in mind, the court turns to the petitioner's argument.

The starting point of the analysis is the crimes of which petitioner was convicted, i.e., battery with serious bodily injury and assault with intent to inflict great bodily injury. See Cal. Penal Code §§ 242, 243(d), 245(a)(1). With respect to the battery, the state had to prove that petitioner used some willful, unlawful force against the victim and that force caused a "significant or substantial physical injury." See People v. Escobar, 12 Cal.Rptr.2d 586,589 (Cal. 1992); People v. Hawkins, 19 Cal.Rptr.2d 434, 435 (Cal. 1993). With respect to the assault charge, the state had to prove that the petitioner attempted to commit a violent injury on another, had the present ability to do so, and that it was more probable than not that the force would result in great bodily injury. Cal. Penal Code §§ 240, 245(a)(1); People v. Russell, 28 Cal.Rptr. 862, 870-71 (Cal. App. 2005). The appellate court summarized the trial evidence as follows:

///

> On November 10, 2001, defendant struck fellow Tehama County Jail inmate Basilio Mercado Bagorio, Jr., in the face while Bagorio was speaking to his wife on the dayroom telephone. According to Bagorio, at that time he told his wife "I think Brian [defendant] hit me." At trial, Bagorio testified that he was "blind-sided" and did not know who hit him. Bagorio's jaw was broken in two places and wired shut for six weeks.
>
> According to Bagorio's wife, during the telephone call she heard her husband say, "I wasn't talking shit." He told her he could not say who broke his jaw. He then told her "Brian" broke his jaw.
>
> Defendant testified he was doing his job cleaning up the dayroom when he saw a fight. He tried to clean up the blood and it stained his clothing.

Petition, Exh. 4, at 4. Petitioner now submits a written statement by Parole Agent Mychael Pierce, who testified at petitioner's trial. Objs., Exh. A. In that statement, Pierce explains that after petitioner's trial a parolee, who was not involved in petitioner's case at all and who was not under Pierce's supervision at the time of petitioner's trial, said that he witnessed the events giving rise to the charges against the petitioner. Id. In his statement, Pierce describes his conversation with this parolee, Andrew Cantrell:

> Cantrell said Bagorio was on the phone and Johnston said to him, we need to talk about something. It involved Bagorio telling other inmates Johnston was a rapist. Cantrell states that Bagorio put the phone down and made some comment like you got a problem, and took a fighting stance. Johnston then punched him in the face, and the fight was basically over.

Objs., Exh. B. Petitioner now explains, contrary to his testimony at trial, that he was not in fact cleaning in the dayroom when he saw a fight. Instead, he now alleges that before this incident he repeatedly had requested that jail officials move him out of the general population because if other inmates learned that he was charged with rape, he would be in danger of attack by them. Petition, Exh. 4, at unenumerated page 9. Thus, he alleges the following:

> After being denied all requests for a cell move, it became known to petitioner that Bagorio and others were planning some sort of violent action against him due to the "rape" charge. In fact, Bagorio was an active member of the "Norteno" gang - with a history of violence. Petitioner learned of this very real threat against his safety from other inmates in the tank who told him that Bagorio had said petitioner was a "rapist." In an attempt to diffuse [sic] an imminent violent confrontation, petitioner approached Bagorio on November 10, 2001, while he was talking on the phone to his wife. Petitioner interrupted Bagorio's conversation, stating that he wanted to talk with him about a serious situation that

5

> he, petitioner, had just become aware of. At that point, Bagorio said something to his wife and left the phone hanging. He then walked a few feet away to where petitioner was standing, and asked him what was so important. Petitioner told Bagorio that he had been informed by other inmates that he (Bagorio) had been saying that petitioner was a "rapist." When confronted, Bagorio stated "It looks like we're going to have a problem." - and took up a fighting stance. A violent confrontation then occurred, and Bagorio was injured. The fact that Bagorio found out about petitioner's rape charge, and had told other prisoners about it, confirmed petitioner's worst fears. Instead of waiting to be attacked at a time of Bagorio's choosing, petitioner had mistakingly [sic] believed that he could diffuse [sic] the situation by talking with Bagorio. Petitioner's actions were based upon a perceived threat for his own safety. Considering Bagorio's violent reaction to being confronted, petitioner's fear for his safety was not unreasonable. All further acts on the part of petitioner were, in fact, in self defense after Bagorio became confrontational.

Id., at unenumerated page 10. The court construes this new version of events as a claim that petitioner was justified in punching the victim in the jaw in order to defend himself against an assault by the victim. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240 (West 2008). In order to justify a violent act in response to an assault, "the defendant must have had an honest and reasonable belief that bodily injury is about to be inflicted on him." People v. Minifie, 13 Cal.4th 1055, 1064-65 (Cal. 1996). The defendant must reasonably perceive that the threat of bodily injury is imminent. Id. In proving his state of mind, petitioner may rely on his fear of a gang-related attack based on the nature of the charges pending against him at the time. Minifrie, 13 Cal.4th at 1065-66 (noting that threats against defendant by a group would tend in reason to make the defendant fearful). However, such threats alone are not sufficient. There must be evidence that the victim's behavior at the time of the attack placed the defendant in fear of "imminent, not just future, harm." Id. at 1068. Furthermore, when acting in self-defense, one may use only such force as is necessary to repel a threat of imminent bodily injury or actual attack. See People v. Moody, 62 Cal. App.2d 18, 22 (Cal. 1943). Force that is likely to cause great bodily harm may be used to repel an attack of similar magnitude. Id., at 22. Thus, a misdemeanor assault may not be repelled with force likely to cause great bodily harm. See People v. Jones, 191 Cal. Ap. 2d 478, 482 (Cal. App. 1961).

1  Here, petitioner asserts that he feared an attack by Bagorio and other Nortenos based on
2  reports from other inmates. But, he does not submit any evidence - either in the form of
3  declarations from other inmates incarcerated at that time or of jail records showing that he had
4  reported threats of harm - to substantiate his new, self-serving allegation of fear. Furthermore,
5  the only evidence of the victim's behavior at the time of the altercation is in Pierce's statement
6  and in petitioner's new recounting of the events. Both now say that Bagorio dropped the phone
7  and assumed a "fighting stance," while saying that the two of them had a problem. Bearing in
8  mind that self defense "does not depend upon the existence of actual danger but rather depends
9  upon appearances," Minifie, 13 Cal.4th at 1068, the court finds that this is not enough to
10 establish that plaintiff reasonably feared imminent bodily harm at the hands of Bagorio. There is
11 no description of the actual position of Bagorio which is described as a "fighting stance."
12 Neither is there any description of Bagorio's tone of voice. There is there any compelling
13 explanation for petitioner's the prior inconsistent testimony that he was simply cleaning and
14 inadvertently got blood on his clothing. On this evidence, the court cannot say that a reasonable
15 jury might find that plaintiff reasonably feared imminent bodily harm at the hands of Bagorio.

16     However, even if a jury were to find that petitioner was justified in using some level of
17 force to defend himself, no reasonable jury could find that he was justified in using the amount of
18 force demonstrated by this record. Petitioner broke Bagorio's jaw, which was wired shut for six
19 weeks. It is no stretch to find that this constitutes great bodily injury. See People v. Fosselman,
20 33 Cal.3d 572, 579 (Cal. 1983) (broken jaw that had to be wired shut for three weeks constitutes
21 serious bodily injury). Nothing in these new allegations justifies striking such a blow. Petitioner
22 inflicted this harm in response to an alleged "fighting stance" combined with a statement to the
23 effect that there was a "problem." There is no allegation, or even suggestion, that Bagorio had a
24 weapon or stated that he intended to inflict any particular harm on petitioner. There is no
25 evidence that Bagorio gestured or made any abrupt movement that petitioner may reasonably
26 have perceived as an attack that could have resulted in serious bodily injury. On the evidence

currently before the court, petitioner has not demonstrated any likelihood that a reasonable juror would not have found him guilty beyond a reasonable doubt with respect to either the battery or assault charge. Petitioner has not satisfied the Schlup standard. Accordingly, he cannot avoid the statutory time limit to bring this petition.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this court has conducted a de novo review of this case. Having carefully reviewed the entire file, including all of petitioner's objections, the court finds the findings and recommendations to be supported by the record and by proper analysis.

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed July 18, 2008, are adopted in full; and
2. Respondent's February 6, 2008, motion to dismiss is granted; and
3. This action is dismissed.

Dated: March 30, 2009

GARLAND E. BURRELL, JR.
United States District Judge